IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANNA

| | |
|---|---|
| WILLIAM K. HAND, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SECURE LENDING INCORPORATED, | ) ) ) |
| Defendants. | ) ) ) ) |

Case No. _____

**CLASS ACTION COMPLAINT**

Plaintiff, William K. Hand ("Plaintiff"), on behalf of himself and all other similarly situated parties (the "Class"), by and through his undersigned counsel, and pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, and Fed. R. Civ. P. 23, files this class action against Defendant, Secure Lending Incorporated ("Defendant" or "SLI"). In support of this Class Action Complaint, Plaintiff shows as follows:

**I.     INTRODUCTION**

1.

Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). As set forth more fully herein, Defendant initiated autodialed telemarketing calls that utilized artificial or prerecorded voice messages to cellular phones, including Plaintiff's cellular phone, without the prior express written consent of Plaintiff or the other members of the Class and in violation of the TCPA.

1

2.

This case challenges SLI's practice of initiating autodialed telemarketing calls to cellular phones and using artificial or prerecorded voice messages without the prior express written consent of the called party as required by the TCPA. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i). Plaintiff seeks class-wide relief against SLI for violating the TCPA. A class action is the best means of obtaining redress for SLI's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Fed. R. Civ. P. 23.

## II. PARTIES

3.

Plaintiff, William K. Hand, is an individual and a citizen of Louisiana, residing in Raceland, Louisiana.

4.

Defendant, Secure Lending Incorporated, is an Ohio corporation headquartered at 707 Brookpark Road, Cleveland, Ohio 44109.

## III. JURISDICTION AND VENUE

5.

Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiff's claims arise under the TCPA, a federal statute.

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

### IV.    DEMAND FOR JURY TRIAL

7.

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all issues so triable.

### V.    THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

**A.    *THE HISTORY OF THE TCPA.***

8.

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.

When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.* at ¶¶ 2, 8.

10.

The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing*,

3

https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited Jan. 31, 2020).

11.

The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed telemarketing calls to cellular telephones or the use of artificial or prerecorded voice messages without the "prior express written consent" of the called party.  47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

### B. THE TCPA PROHIBITS AUTOMATED TELEMARKETING CALLS AND THE USE OF ARTIFICIAL OR PRERECORDED VOICE MESSAGES.

12.

The TCPA requires prior express written consent for the transmission of autodialed telemarketing calls to cellular telephone numbers and/or telemarketing calls utilizing artificial or prerecorded voice messages.  *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200(f)(1), (12).

13.

For purposes of the TCPA, "[t]he term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

14.

Under the TCPA and its implementing regulations, "[t]he written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not

4

required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. 64.1200(f)(8)(i)(A).

## VI.   FACTUAL BACKGROUND

15.

Plaintiff's telephone number, (985) 228-XXXX, is registered to a cellular telephone service. All calls to Plaintiff described herein were to that cellular telephone number.

16.

Plaintiff's telephone number, (985) 228-XXXX, has been on the National Do Not Call Registry since May 5, 2019.

17.

The TCPA defines "automatic telephone dialing system," or "ATDS," as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18.

SLI initiated unauthorized telephone solicitations to the cellular phones of Plaintiff and other members of the Class using an ATDS and artificial or prerecorded voice messages to (1) advertise the availability of SLI's loan products to Plaintiff and other members of the Class, (2) encourage Plaintiff and other members of the Class to apply for loan products offered by SLI, and (3) obtain applications for loan products offered by SLI from Plaintiff and other members of the Class.

19.

SLI used an ATDS and artificial or prerecorded voice messages to call the cellular phones of Plaintiff and other members of the Class without their prior express written consent.

20.

Plaintiff did not give SLI his cellular telephone number or request information about a loan.

21.

Plaintiff did not expressly consent in writing to receive SLI's autodialed telemarketing calls to his cellular phone.

A. *November 19, 2019 Telemarketing Call*

22.

On November 19, 2019, at 3:45 p.m. (CST), Plaintiff received an unsolicited call on his cellular phone.

23.

The November 19, 2019 call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a pre-recorded voice message came on the line.

24.

A pause followed by a "click" or "beep" is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *See* 2003 Order, 18 FCC Rcd. at 14022, n. 31. (in 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call.").

25.

The pre-recorded voice message identified the caller as a telemarketer calling on behalf of "Secure Lending Incorporated" and directed Plaintiff to "press one" to speak with an SLI representative or to

"press nine" to be placed on SLI's internal do not call list.

26.

Pursuant to the instructions outlined in the pre-recorded voice message, Plaintiff "pressed nine" to be placed on SLI's internal do not call list and the call automatically disconnected.

    B.    *November 21, 2019 Telemarketing Call*

27.

On November 21, 2019, at 10:14 a.m. (CST), Plaintiff received another unsolicited call on his cellular phone.

28.

The November 21, 2019 call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a pre-recorded voice message came on the line.

29.

This pause followed by the "click" or "beep" sound is evidence of the caller's use of a predictive dialer.

30.

The pre-recorded voice message identified the caller as a telemarketer calling on behalf of "Secure Lending Incorporated" and directed Plaintiff to "press one" to speak with an SLI representative or to "press nine" to be placed on SLI's internal do not call list.

31.

Pursuant to the instructions outlined in the pre-recorded voice message, Plaintiff "pressed nine" to be placed on SLI's internal do not call list and the call automatically disconnected.

C. *November 25, 2019 Telemarketing Call*

32.

On November 25, 2019, at 10:10 a.m. (CST), Plaintiff received another unsolicited call on his cellular phone.

33.

The November 25, 2019 call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a pre-recorded voice message came on the line.

34.

This pause followed by the "click" or "beep" sound is evidence of the caller's use of a predictive dialer.

35.

This pause followed by the "click" or "beep" sound is evidence of the caller's use of a predictive dialer.

36.

The pre-recorded voice message identified the caller as a telemarketer calling on behalf of "Secure Lending Incorporated" and directed Plaintiff to "press one" to speak with an SLI representative or to "press nine" to be placed on SLI's internal do not call list.

37.

Pursuant to the instructions outlined in the pre-recorded voice message, Plaintiff "pressed nine" to be placed on SLI's internal do not call list and the call automatically disconnected.

      D.      *December 6, 2019 Telemarketing Call*

38.

On December 6, 2019, at 9:19 a.m. (CST), Plaintiff received another unsolicited call on his cellular phone.

39.

The December 6, 2019 call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a pre-recorded voice message came on the line.

40.

This pause followed by the "click" or "beep" sound is evidence of the caller's use of a predictive dialer.

41.

The pre-recorded voice message identified the caller as a telemarketer calling on behalf of "Secure Lending Incorporated" and directed Plaintiff to "press one" to speak with an SLI representative or to "press nine" to be placed on SLI's internal do not call list.

42.

Pursuant to the instructions outlined in the pre-recorded voice message, Plaintiff "pressed nine" to be placed on SLI's internal do not call list and the call automatically disconnected.

      E.      *January 2, 2020 Telemarketing Calls*

43.

On January 2, 2020, at 11:51 a.m. (CST), Plaintiff received another unsolicited call on his cellular phone.

9

44.

The January 2, 2020 call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a pre-recorded voice message came on the line.

45.

This pause followed by the "click" or "beep" sound is evidence of the caller's use of a predictive dialer.

46.

The pre-recorded voice message identified the caller as a telemarketer calling on behalf of "Secure Lending Incorporated" and directed Plaintiff to "press one" to speak with an SLI representative or to "press nine" to be placed on SLI's internal do not call list.

47.

This time, however, eager to speak to an SLI representative regarding SLI's refusal to honor his request to be placed on the internal do not call list , Plaintiff "pressed one" to speak with an SLI representative and was connected with an SLI employee named Rick Board.

48.

During his telephone call with Mr. Board, Plaintiff stated that he never provided his consent to be contacted by SLI and expressly requested, for the fifth time, that he be placed on SLI's do not call list.

49.

On January 2, 2020, at 12:17 p.m. (CST), Plaintiff received another unsolicited call on his cellular phone.

F.     **Allegations Common to All Calls**

50.

Defendant's purpose in making the calls was to sell its services to Plaintiff.

51.

Plaintiff has never been a customer of Defendant.

52.

Plaintiff did not provide prior express consent or prior express written consent to receive ATDS-generated calls and/or calls utilizing artificial or prerecorded voice messages from, or on behalf of, Defendant.

53.

Defendant never disclosed to Plaintiff that it would use an ATDS-generated calls and/or calls utilizing artificial or prerecorded voice messages to contact him.

54.

Defendant never disclosed to Plaintiff that he need not consent to receiving ATDS-generated calls and/or calls utilizing artificial or prerecorded voice messages in order to buy its products.

55.

The calls from Defendant were not necessitated by an emergency.

56.

All parties were in the United States during the calls.

57.

Plaintiff's privacy has been violated b the above-described ATDS-generated calls and calls utilizing artificial or prerecorded voice messages from, or made on behalf of, Defendant.  The calls were an annoying, harassing nuisance.

58.

SLI's practice caused actual harm to Plaintiff and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their phone lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

## VII.   CLASS ALLEGATIONS

59.

Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against SLI on behalf of himself and all other persons similarly situated, as members of two proposed classes or sub-classes.

60.

For the first class, which concerns the receipt of pre-recorded voice message and ATDS telephone calls transmitted without prior express consent, Plaintiff proposes the following class definition:

> All persons in the United States (1) who received one or more advertising telephone calls, (2) to their mobile or cellular telephone number, (3) placed by or on behalf of SLI using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

61.

For the second class, which concerns the receipt of pre-recorded voice message and ATDS telephone calls transmitted without prior express consent and whom unsuccessfully sought to be placed on SLI's internal Do Not Call List, Plaintiff proposes the following class definition:

> All persons in the United States (1) who received one or more advertising telephone calls, (2) to their mobile or cellular telephone number, (3) placed by or on behalf of SLI using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after four years before the filing of the complaint, (5) without their prior express written consent, and (6) whom unsuccessfully sought to be placed on SLI's internal do not call list utilizing the automated system established by SLI.

62.

Excluded from the class are SLI, any entity in which SLI has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

63.

The Class is so numerous that joinder of all its members is impracticable. The automated technology SLI used to call Plaintiffs cell phone is capable of contacting thousands of people a day, which makes its very likely that the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable and disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

64.

The proposed class members are identifiable through phone records, internal call logs, and phone number databases.

65.

Plaintiff is a member of the proposed classes or sub-classes.

66.

The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions of law and fact common to Plaintiff and to the proposed class, include but not limited to, the following:

 a. Whether SLI used an automatic telephone dialing system and artificial or prerecorded voice messages to call the cellular phones of Plaintiff and others;

 b. Whether SLI initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

 c. Whether SLI's system failed to properly log and honor consumer requests to be placed on SLI's internal do not call list;

  d.  Whether SLI is liable for violations of the TCPA;

  e.  Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

  f.  Whether SLI's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

  g.  Whether Plaintiff and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

67.

Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular telephone lines through the same or similar dialing system, utilizing the same artificial or prerecorded voice message, and the same system for receiving, logging, and implementing requests to be placed on SLI's internal do not call list. As such, Plaintiff's claims are typical of the claims of the Class, because his claims and those of the Class arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

68.

Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent. Plaintiff is a victim of ATDS telemarketing to his cellular phone and the unlawful use of a prerecorded voice message, without his prior express written consent, and he is committed to the vigorous prosecution of this action. Plaintiff has retained counsel competent and experienced in complex TCPA class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Plaintiff and his counsel will fairly and adequately protect the interest of members of the class.

69.

Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the FCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

70.

Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy. The only individual questions concern identification of class members, which will be ascertainable from records maintained by SLI or their agents.

71.

A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

72.

The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions. Only one out of every seven million robocalls results in the filing of a federal TCPA lawsuit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Feb. 1, 2020), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls), *with* WebRecon, *WebRecon Stats for December 2019 & Year in Review* (last visited Feb. 1, 2020), https://webrecon.com/webrecon-stats-for-dec-2019-and-year-in-review-how-did-your-favorite-statutes-fare/ (3267 TCPA complaints). Except to the extent TCPA violations are remedied by class actions, the overwhelming majority of communications made in violation of the TCPA are done so with impunity.

73.

Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

74.

Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendant's calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

## VIII.   COUNT I
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227, *et seq.*)

75.

Plaintiff incorporates all preceding paragraphs as though fully set forth herein and brings Count I individually and on behalf of the class.

76.

The foregoing acts and omissions of SLI constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice without the prior express written consent of the call recipients.

77.

As a result of SLI's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

78.

Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting SLI from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

## IX.    COUNT II
## KNOWING AND/OR WILLFUL VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227(b)(1)(A))

79.

Plaintiff incorporates all preceding paragraphs as though fully set forth herein and brings Count II individually and on behalf of the class.

80.

As a result of knowing and/or willful violations of the TCPA by Defendant, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular phone numbers using an ATDS and/or artificial or prerecorded voice message in violation of the TCPA.

81.

SLI's violations of the TCPA were knowing or willful.  Accordingly, Plaintiff requests that the Court increase the statutory damages up to three times the amount.  *See* 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiff, for himself and all class members, requests the following relief:

- A. Certification of the proposed Class;
- B. Appointment of Plaintiff as representative of the Class;
- C. Appointment of Plaintiff's counsel as counsel for the Class;
- D. A declaration that actions complained of herein by SLI and/or its affiliates, agents, or related entities violate the TCPA;
- E. An order enjoining SLI from engaging in the same or similar unlawful practices alleged herein;
- F. An order awarding to Plaintiff and the Class of statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);
- G. An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);
- H. An award to Plaintiff and the Class of attorney's fees and costs, as allowed by law and/or equity;
- I. Leave to amend this Complaint to conform to the evidence presented at trial;

and

J. Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Respectfully Submitted,

*/s/ Paul. M. Sterbcow*
PAUL M. STERBCOW (#17817)
BETH E. ABRAMSON (#27350)
JESSICA L. IBERT (#33196)
IAN F. TAYLOR (#33408)
Lewis, Kullman, Sterbcow & Abramson, LLC
601 Poydras Street, Suite 2615
New Orleans, Louisiana 70130
Telephone: (504) 588-1500
Facsimile: (504) 588-1514
sterbcow@lksalaw.com
itaylor@lksalaw.com
babramson@lksalaw.com
jibert@lksalaw.com

ATTORNEYS FOR PLAINTIFF WILLIAM K. HAND AND THE PROPOSED CLASS

**PLEASE SERVE:**

**SECURE LENDING INCORPORATED**
Through their registered agent for service:
INCORP SERVICES, INC.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, LA  70816